## HERMAN WARD v. STATE.

No. A-6892.  Opinion Filed Nov. 8, 1929.
(282 Pac. 372.)

Bass & Hardy, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter called the defendant, was by information charged with knowingly, willfully, and unlawfully having in his possession, mash, wort, and wash, which said mash, wort, or wash was suitable for making corn whisky; was sentenced to pay a fine of $50 and costs, and be imprisoned in the county jail for a term of 30 days; from which judgment and sentence the defendant has appealed to this court.

Ed Graunah, called as a witness on behalf of the state, testified, in substance, as follows:

"I am acquainted with Herman Ward; on or about the 4th day of October, 1926, I was out to the defendant's place a little south of Pooleville; Bob Short was with me; I saw the defendant and another person coming through a corn patch; we told them we were looking for whisky; I went to where I had seen the defendant and the other party stop; Mr. Short had a flashlight; we found a barrel buried in the ground, it looked like mash; this was on a

lease the defendant controlled. It was about two or three hundred yards from defendant's house; Mr. Short went to defendant's house and got an ax, and went down there and chopped around and never did get it out."

On cross-examination witness stated he did not believe the barrel he found was a quarter of a mile from defendant's house;

"I never measured it; I don't know whether you can see from defendant's house to where the barrel was located or not; it was after dark and the barrel was buried in the ground in some high johnson grass; I did not go to the tank of water adjoining this place; they came out of the field and we found this barrel about sundown; I don't know whether the defendant and the other party with him had been picking cotton or not; they were coming to the house; Bob Short was with me when we went to where the barrel was found; I certainly did not know whose barrel it was."

On redirect examination witness stated where they found the barrel—

"Was near where the defendant and party stopped; I nearly walked off in it; I don't know whether there was cotton to the west of the corn patch; I wasn't in the cotton patch; it was getting sundown, right at it, when we went over there; it was the first time I had been on the premises; I do not think Mr. Harris lives as close to here we found the barrel as Mr. Ward; there is a little difference; this barrel was found about one hundred yards from Mr. Harris' fence and tank of water."

The state called Bob Short, who testified:

"I am a deputy sheriff of Carter county; I know the defendant Herman Ward; I was acquainted with the premises on which he lived last October; I made a search of the outlying premises of the defendant; we found a barrel of mash buried in the corn field northwest of the house two or three hundred yards; I looked at this mash pretty close;

it was suitable for making corn whisky at the time we found it; the barrel was destroyed, most all of the mash seeped into the ground, leaving a sediment of meal in the barrel; we caved the bank in on top so it could not be used when we left it; in this corn field where we found this barrel the corn had been gathered, some of the stalks were standing; I noticed folks picking cotton on the west side of this road going due west of this branch; when we found this barrel it was getting dark."

On cross-examination witness stated there was a wire fence north of the cotton patch,

"The pasture is on the north side of that fence; the pond was west of where the barrel was found; the corn had been gathered; west of the corn patch was cotton; when I saw the defendant and the other party they were picking cotton; saw the defendant and the other party after they left the field and started to the house; in patches the johnson grass is high; the barrel was covered up six or eight inches to the top, johnson grass around it, sugar sack spread over it, and lid on. I took the top off the barrel, then cut the barrel with an ax."

This is in substance the testimony of the state.

At the close of the state's testimony the defendant demurred to the testimony of the state, for the reason that the same is insufficient to charge a crime against him, which demurrer was overruled, and defendant excepted. The defendant then moved the court to instruct the jury to return a verdict of not guilty, which motion was overruled and defendant excepted.

The defendant, called as a witness in his own behalf, testified in substance:

"I am twenty-one years old; I have never been convicted of a crime or paid a fine; I farm a mile and a quarter south of Pooleville, have a wife and one child; the

barrel the officers claim they found was not mine; I did not know it was in the field; the day they came out there late in the evening I was picking cotton with Marion Mauldin; Mauldin is now in Burkburnett, Texas; we picked cotton that afternoon as late as we could see to pick; we had been picking in that patch a week, two days and a half; this cotton patch was west from the corn field, adjoining it; the corn field is a quarter of a mile from my house; you could not stand at my house and see a man in the corn field where the officers claim they found the barrel; my house is in a swag, there is another raise in the field by the barn; this field lays in a swag, the grass is high, and the first time I knew about the barrel in the field was when the officers came to the house to get an ax. I never did claim this barrel or know anything about it. Mr. Harris' house is just as close to where they claim they found the barrel as my house, probably fifty yards closer. The barrel was one hundred and fifty feet from the pasture where there is a tank of water joining the fence just a little bit east of where the barrel was located. The corn field where they claim to have found the barrel is between my house and the cotton patch where we were picking cotton; the johnson grass in the place where they claim they found the barrel is as high as my head; at the time they claim they found this barrel of mash I had gathered my corn; the mash was not there at the time I gathered the corn or I would have found it; I don't know to whom this barrel belonged; I did not go from the cotton patch where I had been picking cotton to where the barrel was, nor did I stop where the barrel of mash was claimed to have been found; I gathered the corn a week or ten days prior to the time the barrel was found."

At the close of defendant's testimony Bob Short was called in rebuttal. He stated:

"There was no tracks of a wagon where the mash was located except just a down row; there was no fresh dirt on the barrel; it looked like it had been buried a week or so; the grass was around the barrel."

This is, in substance, the testimony. The defendant has assigned six errors committed by the trial court:

"1. The evidence is contrary to the law.

"2. The verdict is contrary to both the law and the evidence.

"3. The evidence of the State was insufficient to show any crime had been committed by this defendant.

"4. The evidence on the part of the state did not in anywise connect the defendant in any crime violation of the laws of the State of Olahoma.

"5. The court erred in overruling defendant's demurrer to the State's testimony, at the close of the State's evidence.

"6. The court erred in refusing to instruct a verdict of not guilty, at the close of the State's evidence."

The questions to be determined in this case are: First: Is the testimony offered by the state sufficient to prove an offense has been committed? Second: Is the proof sufficient to show that this defendant committed the offense. There is no dispute between the state and the defendant that in a portion of the corn field that had been cultivated by the defendant, and after the corn had been gathered out, the witnesses for the state found the barrel, the contents of which witnesses say was mash that was suitable for making whisky. There is no testimony on behalf of the state showing that any of the contents of the barrel was taken out by state witnesses; the only statement being that the barrel contained mash; they did not preserve any of the contents of the barrel they found, nor did they taste it. The testimony shows that, when the officers went to defendant's home, the defendant and Marion Mauldin were picking cotton, they picked until it was so dark they had to quit. One of the witnesses for

the state testified that, as the defendant and the other party working with him started to the house, they came through the field where the corn had been cultivated and stopped; that afterwards the state witnesses went down to about where they saw the defendant stop and found a barrel, the contents of which the witnesses say was mash. The defendant says that on their way home from where they had been picking cotton they did not stop in the field; that he knew nothing about the barrel the state witnesses claim to have found; and that it did not belong to him, nor did he have anything to do with the barrel or its contents. There is no testimony on behalf of the state showing what is usually shown in cases of this character— tracks going to and from the home of the defendant to where it is claimed the barrel was found. The only testimony in this record that in any way whatever tends to connect the defendant with the barrel alleged to have been found by the officers is the fact that he had cultivated the land, where it was alleged the barrel was found, in corn the crop year 1926, and that the defendant was seen picking cotton near the cornfield where it is alleged this barrel was found. The defendant stated that you could not see a man where the barrel was located from his home; and that the place where the barrel was found was 150 feet from the fence between Mr. Harris' place and the cornfield, and adjoining the fence on the Harris side was a tank of water.

Section 1, Session Laws 1923-24, c. 42, is as follows:

"It shall be unlawful for any person, or persons, within this State, to manufacture, ferment or possess, any compound mixture, mash, wort or wash fit for distillation, or for the manufacture of beer, wine, distilled spirits, or other alcoholic liquors, the sale, barter, giving away or otherwise disposing of which is prohibited by the laws of the State of Oklahoma."

The defendant in this case, by the allegations in the indictment, is charged with the possession of mash, wort, or wash suitable for making corn whisky. Viewing all the testimony in this case it is evident that the evidence does not support the verdict for the reason that the state has failed to prove any actual or constructive possession by the defendant of the barrel of mash, wort, or wash alleged to have been found by the officers. It is true that under our laws the jury is the ultimate tribunal for the investigation and determination of the questions of fact. However, if the state fails to offer any evidence tending to prove the offense charged, or whether the evidence offered tends to prove anything pertinent to the issue, is a question for the court, and, where there is no evidence tending to identify the defendant with the commission of the offense charged in the indictment, the court should direct a verdict of acquittal. Ward v. State, 15 Okla. Cr. 61, 175 Pac. 60; Kirk v. State, 39 Okla. Cr. 44, 263 Pac. 170.

The defendant should not be convicted upon mere suspicion of guilt or strong probability of guilt. All the evidence tends to show that the barrel the state witnesses claim contained mash was from 150 yards to a quarter of a mile from defendant's house, in a cornfield from which the corn had been gathered by the defendant some days prior to the finding of the barrel. There is no evidence to show the connection of the defendant with the possession of this barrel or its contents except the fact that the barrel was found in the field that the defendant had cultivated in corn, which tends to create a suspicion or a possibility that it belonged to the defendant. However, a verdict based upon a possibility or suspicion is not justified. There is no evidence tending to show that

the defendant had any knowledge that the barrel found by the officers was in the field.

We hold that the evidence is insufficient to show that this defendant is guilty of the crime charged against him, and for that reason his demurrer should have been sustained, and the jury directed by the court to return a verdict of not guilty.

The judgment is reversed.

EDWARDS, P. J., and CHAPPELL, J., concur.